## Case No. 422.

### The ANNIE LINDSEY.

[6 Ben. 290.][1]

District Court, S. D. New York. Jan., 1873.[2]

COLLISION IN THE SOUND—SAILING VESSELS MEETING—CLOSE-HAULED AND FREE.

1. A brig and a schooner came in collision in Long Island sound at night. The schooner was sailing to New York, and the brig was sailing from New York. The schooner saw the brig nearly ahead, and ported her helm. The brig saw the schooner nearly ahead, and first starboarded and then ported. There was a conflict of evidence as to the wind, the witnesses for the schooner claiming that it was nearly south, and those for the brig claiming that it was southeast. Each vessel claimed to have been close-hauled. The schooner had the wind on her port side. The brig had it on her starboard side. The brig struck the schooner on her port quarter. The brig alleged that she starboarded in obedience to a call from the schooner to "keep off:" *Held*: That, on the evidence, the brig was close-hauled.

[See note at end of case.]

2. That, on the evidence of the brig, that she was heading east northeast, and saw the green light of the schooner from half a point to a point on her port bow, the vessels were meeting nearly end on, and, under the 11th article, it was the duty of the schooner to port, which she did.

[See note at end of case.]

3. That, if the courses were crossing, there was risk of collision, as the brig was drawing a point on to the course of the schooner, and, under article 12th, the schooner, having the wind on her port side, was bound to keep out of the way of the brig, which she endeavored to do by porting.

4. That, if they were meeting, it was the duty of the brig to port, instead of first starboard-

ing, as she did; and that the excuse which she set up for the starboarding was not established.

[See note at end of case.]

5. That, if the courses were crossing, it was the duty of the brig to keep her course; that, in either view, the brig was in fault, and liable for the damages; and that the schooner was not in fault.

[In admiralty. Libel by Daniel Brown and others, owners of the schooner Sallie Smith, against the brig Annie Lindsey, (Cornelius T. Tompkins, claimant,) for damages caused by collision. Decree for libellant. Affirmed by the circuit court, (not reported; see note at end of this case,) and also affirmed by the supreme court under title of The Annie Lindsley, 104 U. S. 185.]

Beebe, Donohue & Cooke, for libellants.

G. M. Speir, for claimant.

BLATCHFORD, District Judge. The libellants, as owners of the schooner Sallie Smith, and carriers of a cargo on board of her, bring this suit against the brig Annie Lindsey, to recover for the total loss of the schooner and her freight money and cargo, through a collision, which took place at about half past eight o'clock in the evening of the 7th of May, 1869, between those two vessels, in Long Island sound, off Eaton's Neck light, whereby the schooner and her cargo were sunk. The schooner was bound to New York from the Connecticut river. The brig was bound from New York to New Brunswick.

The libel alleges that the wind was south half west; that the schooner had her regulation lights set and burning brightly; that she was heading a little south of west, or about west; that the sails of a vessel were made ahead, or nearly so, but no light was discernible; that she was apparently bound in an opposite direction, and, after she was discovered, and when it was apparent there would be a collision unless something was done, the wheel of the schooner was ported, and she opened the other vessel until the red light of such other vessel was seen off the port bow of the schooner; that the wheel of the schooner was kept to port, and the approaching vessel, which turned out to be the brig Annie Lindsey, was hailed from the schooner to luff, but, instead of porting, she was kept away, and her stem struck the port quarter of the schooner, and crushed in her side, so that she sank, with her cargo, in a few minutes; that the wind at the time was free for vessels upon their proper courses bound to the east, but those going west were close-hauled; that the collision was caused solely by the negligence of those navigating the brig, in not keeping a lookout, in not having the proper lights set and burning, in not porting and keeping to the right, when meeting a vessel ahead and bound in an opposite direction, and in starboarding instead of porting; and that the lights of the schooner were seen at a sufficient distance,

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court, (opinion not reported, and not accessible.) Also affirmed by the supreme court in The Annie Lindsley, 104 U. S. 185.]

by those on board of the brig, for them to have avoided the schooner.

The answer alleges that the wind was about southeast; that the schooner, when first seen by the brig, was steering a west by south course; that, just before the collision, the schooner suddenly changed her course to northwest, which brought her across the bow of the brig; that the wind was free for vessels bound to the west; that the brig was sailing close-hauled; that the collision was caused by the fault of those navigating the schooner; that the green light of the schooner was first seen on the lee bow of the brig; that the schooner, as she approached, was going to the windward of the brig, and hailed the brig to keep off, and the wheel of the brig was turned to keep off, and then the schooner suddenly changed her course to the northwest, and called out to the brig to luff; that the wheel of the brig was immediately put hard down, and she luffed, but too late, for the schooner kept off across the bow of the brig, and winged her foresail out, and the brig struck the schooner; and that the wind was on the port side of the schooner and on the starboard side of the brig.

The material points of difference raised by the pleadings are (1.) As to the wind. The libel alleges it was south half west; the answer, about southeast. (2.) As to whether the schooner, after getting to windward of the brig, kept away and crossed the bows of the brig. The testimony is all in the form of written depositions. The witnesses for the libellants are Chase (the master of the schooner), Logan (the mate), and Reed (a hand). There were but two persons on deck on the schooner, Logan, at the wheel, and Reed, forward on the lookout. The master was below.

The witnesses for the claimant are Parritt (the master of the brig), Nicholson (the second mate), and Davis (a hand). Nicholson was at the wheel, Davis was forward on the lookout, and the master also was on deck.

The deposition of Parritt was taken on the 30th of October, 1869. Then Reed and Chase, for the libellants, were examined in June, 1871, and Logan in October, 1871. Then Davis and Nicholson, for the claimant, were examined in October, 1871, and Parrit was, at the same time, examined again.

Reed was forward of the windlass, on the schooner. He says, that the wind was south by west; that the schooner was close-hauled; that he saw a vessel about dead ahead, but saw no light, and reported the vessel to Logan, and told him to swing her off, which was done, until the red light of the brig became visible to him, which was the first light he saw on her; and that he hailed the brig and told her to luff.

Logan, at the wheel of the schooner, says, that the wind was south; that the schooner was heading west by south; that Reed reported a vessel ahead and told him to keep off; that he ported; that, after that, he looked ahead and saw the red light of the brig; that he saw no other light, at any time, on the brig; and that Reed called to the brig to luff, and he also called to the brig to luff, after Reed had done so.

Chase, master of the schooner, says that the wind was south half west, and that the schooner was heading west half south.

It is to be noted, that neither Logan nor Chase says that the schooner was close-hauled in fact, or how her sheets were hauled. They leave it to inference, from the fact that, according to them, she was sailing only seven points off of the wind.

Parritt, on the deck of the brig, and her master, says, that he was bound east, but could not head his course, and was heading east northeast, and going about seven knots an hour; that he saw a green light right ahead; that, at the same time, his lookout reported a light right ahead; that he heard a man sing out from the schooner to hard up his wheel; that the brig was kept off one point, which opened the schooner's light broad on the weather bow of the brig; that the schooner kept off across the bow of the brig, and sung out for him to luff; that he luffed, by putting the wheel hard down, which caused the vessels to strike; that the schooner, when she kept off, winged her foresail out; that the brig was sailing close-hauled, and had her starboard tacks aboard; that the wind was southeast, and the brig was sailing as near to the wind as a square-rigged vessel could sail; that the schooner changed her course suddenly, from west by south to northwest, which brought her across the bows of the brig, and, when she saw there would be a collision, sang out to the brig to luff; and that, if the schooner had kept her course, there would have been no collision.

Davis was standing forward, on top of the forecastle, on the brig, as a lookout. He says, that he saw a green light a little on his lee bow, a half a mile off, and approaching, and sung out, "Light ahead;" that he heard a cry from the schooner to keep off, and, directly afterwards, another cry to luff; that, when he heard the cry to keep off, the schooner was going to the windward of the brig, and she suddenly turned and kept off across the bow of the brig; that the brig was close-hauled, on her starboard tack; that, when he first saw the green light, it bore from half a point to a point on his lee bow, and was nearly ahead; that it afterwards got to be half a point on his starboard bow; that the schooner then kept hard off, and crossed his bow, and showed her red light; and that the vessels were very close together, when the cry came to luff.

Nicholson, at the wheel of the brig, says, that he heard Davis report a light ahead, and looked, and saw a green light about a point on his lee bow, and from a third to a half of a mile off; that the wind was east

southeast to southeast, and the brig was close-hauled on the wind, and heading about east northeast; that he heard a man from the schooner, as she came up, sing out, "Hard up your wheel;" that Captain Parritt, at the same time, gave him orders to keep her off; that he started to do so, and turned the wheel, and just then heard a cry from the schooner to luff; that Captain Parritt, at the same time, gave him orders to luff, and assisted him at the wheel; and that he was steering full and bye, and not by the compass.

According to the story of the schooner, as her witnesses tell it, she was heading west by south, or west half south, and saw a vessel ahead, but saw no light on her, and, without knowing that the two vessels were meeting end on, or nearly end on, ported. If the vessels were meeting end on, or nearly end on, so as to involve risk of collision, it was the duty of the schooner to port. The brig, according to her own testimony, was heading east northeast, and saw the green light of the schooner so nearly right ahead that it was not more than from half a point to a point on the port bow of the brig, nearly ahead. I conclude, therefore, on this view, that, under the 11th article, the case was not one where the two vessels would, if both had kept on their respective courses, have necessarily passed clear of each other, but was one in which the vessels were meeting end on, or nearly end on, so as to involve risk of collision. It was, therefore, the duty of the schooner to port. According to her testimony, she did port, and did nothing else, and ported the moment the brig was seen, and swung off until the red light of the brig came into view. That the schooner did port, is testified to by the witnesses from the brig, it being contended by the brig, however, that this was not done until the green light of the schooner was seen half a point on the starboard bow of the brig.

Regarding the courses of the two vessels as crossing, they involved risk of collision, as the brig was drawing a point on to the course of the schooner. On the evidence, I conclude, that, without doubt, the brig was close-hauled and did not have the wind free, and that the schooner was not close-hauled and did have the wind free. Hence, under article 12, the schooner, having the wind on her port side, was bound to keep out of the way of the brig. She endeavored to do so by porting, and ported, as before stated, until she opened the red light of the brig.

As meeting the schooner end on, or nearly end on, so as to involve risk of collision, it was the duty of the brig, under article 11, as much as of the schooner, to port. It is very clear, that, at first, the brig did not port. On the contrary, she starboarded. Her master says that, by the starboarding, she kept off one point, until she opened the green light of the schooner broad on the weather

bow of the brig. The starboarding is sought to be excused by the allegation, that it was done because the schooner hailed the brig to put her wheel hard up or to keep off. This is not confirmed by any witness from the schooner. It would have been a most extraordinary order for the schooner to give to the brig, when the schooner herself was porting. The proper order to be given, if the schooner was porting, was for her to order the brig to luff. The witnesses from the schooner say that they hailed the brig to luff. All the appearance of the green light of the schooner on the starboard bow of the brig that there was, was produced by the starboarding of the brig, the schooner having only ported and not starboarded. On this view, therefore, there was fault in the brig, in starboarding, which contributed to the collision.

As crossing, with her course, the course of the schooner, so as to involve risk of collision, it was the duty of the brig, under articles 12 and 18 (the two vessels having the wind on different sides, and the brig having the wind on her starboard side and not having it free, and the schooner having the wind on her port side, and not being close-hauled), to keep her course, and to permit the schooner to keep out of the way, and not to attempt to keep out of the way herself. It is manifest, that the brig, by attempting to keep out of the way, and by starboarding to do so, thwarted the efforts of the schooner, by porting, to keep out of the way of the brig. The excuse, of the hail from the schooner, to keep off, has been already referred to.

Again, the brig being close-hauled, and having the wind on her starboard side, it was her duty to keep her course, and not to starboard, whether the schooner was close-hauled or not.

In any view of the case, there must be a decree for the libellants, with costs, with a reference to a commissioner to ascertain the damages sustained by them by the collision.

[NOTE. On appeal to the circuit court, the judgment was affirmed, and that court found, inter alia, the following facts: "(5) When the brig was discovered from the schooner, the two vessels were approaching each other end on, or nearly end on, and on courses involving the risk of collision. The brig was close-hauled. The schooner had the wind a little free. (6) A short time before the collision, the lookout on the schooner discovered the brig about dead ahead. He saw no lights, but made out the vessel and her sails, coming, as he judged, from an opposite direction. He at once reported to the man at the wheel, who put the wheel to port and bore off until he opened the red light on the brig. (7) The schooner was not discovered from the brig until after the brig was discovered from the schooner. The lookout was the first to see schooner from the brig, and he called out, 'Light right ahead.' Almost at the same moment a hail was heard from the schooner. The brig's wheel was then put to starboard, and she swung off one point. As soon as this movement could be discovered, another hail

came from the schooner to luff, and the wheel was put to port, but before it could materially affect the course of the brig the two vessels came together, the brig striking the schooner on the port quarter, the jib-boom of the brig passing through the mainsail of the schooner. The schooner sank in a very few minutes with her cargo, and was a total loss. (8) The starboarding of the brig was the direct cause of the collision." (The other findings, and the conclusions of law of the circuit court, may be found in the statement to this case. The Annie Lindsley, 140 U. S. 185.) The supreme court held that, as the circuit court did not find that the light seen upon the schooner before the collision was a green light, there was no occasion for the starboarding of the brig under the twenty-fourth sailing rule, (Rev. St. § 4233,) which permits a departure from the ordinary rules when necessary to avoid immediate danger, but that the case was within the sixteenth rule, (Id. § 4233,) which provides: "If two sail vessels are meeting end on, so as to involve the risk of collision, the helms of both shall be put to port, so that each may pass on the port side of the other."—and consequently the brig was liable for having neglected to follow that rule. The Annie Lindsley, 104 U. S. 185.]